# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ANDRE MARQUEE PIERCE,                **PRISONER**
    **Petitioner**               :     **CASE NO. 3:02CV838(JCH)(HBF)**

**v.**                                :

**WARDEN GIOVANNI GOMEZ,**     :     **DECEMBER 3, 2003**
    **Respondent**

## MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT'S MOTION TO DISMISS

This memorandum is submitted in support of the respondent's motion to dismiss the second amended petition for writ of habeas corpus [Doc. # 12] filed in the above-captioned proceeding. The respondent moves to dismiss the petition on the ground that the petitioner has failed to exhaust his state court remedies by properly presenting some of these claims in the state courts of Connecticut. Alternatively, the Court may dismiss the unexhausted claims and stay further proceedings on the exhausted claim.

## I.    PROCEDURAL HISTORY

This procedural history is compiled from documents appended to the respondent's motion to dismiss dated December 3, 2003, as follows:

    Appendix A   Petitioner's brief on appeal to the Connecticut Appellate Court

    Appendix B   Petitioner's petition for certification to the Connecticut Supreme Court requesting permission to appeal the Appellate Court's decision

In the Connecticut Superior Court for the judicial district of Fairfield, Gormley, J., presiding, the petitioner was found not guilty of murder but guilty of the lesser included offense of manslaughter in the first degree with a firearm in violation of Connecticut

General Statutes § 53a-55a.  On October 2, 1997, the trial court imposed a sentence of thirty years incarceration.

On appeal to the Connecticut Appellate Court, the petitioner claimed that (1) the trial court erred in finding probable cause for the charge of murder at the probable cause hearing; (2) the trial court erred in admitting evidence that a "hit" had been placed on the petitioner and on a witness; (3) the trial court erred in admitting evidence of a warrant for the petitioner's arrest; (4) the state's attorney committed misconduct during his closing argument; (5) a witness' identification of the petitioner was the product of a "suggestive" procedure; (6) the trial court erred in admitting evidence that the petitioner was seen by a witness hours after the killing; (7) the trial court erred in admitting evidence of uncharged misconduct committed by the petitioner; and (8) the state's failure to preserve certain evidence was prejudicial.  On March 27, 2001, the Connecticut Appellate Court affirmed the judgment of conviction.  State v. Pierce, 62 Conn. App. 905, 770 A.2d 35 (2001) (per curiam).  The petitioner then petitioned the Connecticut Supreme Court for certification to appeal the decision of the Connecticut Appellate Court.  Certification was denied on May 16, 2001.  State v. Pierce, 256 Conn. 915, 773 A.2d 945 (2001).

Meanwhile, on April 1, 1998, the petitioner filed a petition for writ of habeas corpus in the Superior Court for the judicial district of New Haven.  Thereafter, a trial on the merits of the petitioner's claims was held.  On October 19, 2000, the state habeas court issued its written decision and denied relief.  The petitioner filed a petition pursuant to Connecticut General Statutes requesting permission to appeal the decision of the state habeas court.  That petition was denied.  Although finding the petitioner indigent, the state habeas court also denied the petitioner's motion for a waiver of costs and fees and the appointment of

2

counsel so that he could pursue an appeal of the state habeas court's decision. Thereafter, the petitioner, through counsel, filed a motion for review with the Connecticut Appellate Court in which he challenged the state habeas court's denial of the waiver of costs and fees and the appointment of counsel. That motion was denied on April 25, 2001.

The petitioner then initiated two separate federal habeas corpus proceedings. On May 14, 2002, the petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the instant case. On May 20, 2002, he filed a second petition in Pierce v. Gomez, Case No. 3:02CV874(JCH). Subsequently, the Court ordered the petitioner to file an amended petition raising all of his claims in the instant case and dismissed the petition brought in Case No. 3:02CV874(JCH). The petitioner filed that amended petition [Doc. # 12] on June 9, 2003.

Subsequently, on August 30, 2002, the petitioner filed a second petition for writ of habeas corpus in the Superior Court for the judicial district of Hartford. Andre Pierce v. Warden, State Prison, Docket No. CV02-0819524-S, Superior Court in the judicial district of Hartford. Subsequently, that petition was transferred to the Superior Court in the judicial district of Tolland, where it still is pending resolution.

## II.    ARGUMENT

In this habeas corpus matter brought pursuant to 28 U.S.C. § 2254, the petitioner, Andre Marquee Pierce, challenges his 1997 conviction for manslaughter in the first degree with a firearm in violation of Connecticut General Statutes § 53a-55a. In so doing, he claims that his state conviction is unlawful in that he was denied due process of law because: (1) the prosecutor committed misconduct during the State's closing argument; (2) he was identified by witnesses after the police used suggestive procedures; (3) false

3

testimony was presented at his trial; (4) "improper evidence" was presented by the State; and (5) the state failed to preserve certain physical evidence. He further alleges that he was denied the effective assistance of counsel because his attorney failed to (1) impeach the state's chief witness; (2) call three witnesses who claimed to have heard a third party admit to the crime; (3) object to the admission of false testimony; (4) preserve and introduce the statement of a witness; (5) object to hearsay evidence; (6) call a police detective as a witness. As demonstrated below, the petitioner has failed to exhaust his state court remedies by "fairly" presenting the claims raised in Counts One, Two, Three, and Four of the petition in the state courts of Connecticut. As a result, his petition contains several unexhausted claims and must be dismissed as a "mixed" petition.

A.     **The Petitioner Has Failed To Exhaust The Claim Raised In Count One Of His Petition By "Fairly" Presenting It To The State Courts**

In Count One of his Second Amended Petition, the petitioner claims that his due process rights were violated by the prosecutor's closing argument. Specifically, he alleges that the "state's chief witness Richard Guzman testified he was at state's witness Polita Rodriguez apartment at time of fatal gun shot. Ms. Rodriguez testified she didn't see him. Prosecutor argued repeatedly that both witnesses' testimony coincided. It clearly didn't." Claim One; Petition at 7 [Doc. # 12]. This factual basis for this claim was <u>first</u> raised in a petition to the Connecticut Supreme Court for discretionary review of the decision of the Connecticut Appellate Court. The mere presentation of "a claim for the first time to a state court of discretionary review is insufficient to exhaust the claim unless the court considers it." <u>Lurie v. Wittner</u>, 228 F.3d 113, 124 (2d Cir. 2000) <u>citing</u> <u>Castille v. Peoples</u>, 489 U.S.

346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989). Thus, because he first raised his claim of prosecutorial misconduct regarding the testimony of Guzman and Rodriguez in his petition for discretionary review by the Connecticut Supreme Court, the petitioner has not "fairly" present that claim to the state courts.[1]  As a result, the petitioner's claim is not exhausted and cannot be reviewed in these federal habeas corpus proceedings.

### 1.    Facts pertaining to the claim

After the petitioner's sentencing, the petitioner appealed and, in his brief to the Connecticut Appellate Court, raised a claim that the prosecutor committed misconduct during closing argument, as follows:

> The appellant raises an issue of "prosecutorial misconduct", that in which, violated his "due process" rights, when during the State's closing arguments it manipulated the testimony of two of its witnesses in order to make their conflicting account of events leading up to the crime, coincide (tr. 7/23-24/97) at 13, 54; 7/16/97 at 69, 70; 7/17/97 at 49, 56).  "Summerville" held, "'Prosecutorial misconduct of constitutional proportions may rise during the course of closing argument'"  State v. Summerville 214 Conn. 378, 393. Expectingly, the State would argue that these improper remarks were "isolated" and brief", and not a pattern of behavior "repeated" through trial. So then one must ask "what constitutes a pattern of behavior?  Does an improper act commtted [sic], prejudicial remark uttered twice fall short?  And instead, must be done three or more times to be considered a pattern? And just what kind of statement it sends out to [officers] of the court who tempts to manipulate evidence and/or testimony so that it is void of any contradiction" "Its fair ball if it is done more than twice".  To quote directly from "Binet", "'The impermissible [inference] raised by the improper question under all the circumstances gravely impaired the defendant's right to make his [affirmative] defense in a fair and proper manner'". 192 Conn. 618, 631 (1984)  When the prosecutor raised a question of the significance of existing testimony, while focusing the jury attention to facts in evidence that he

_____

[1]     Connecticut Practice Book § 84-2 provides, in relevant part, that "Certification by the supreme court on petition by a party is not a matter of right but of sound judicial discretion and will be allowed only where there are special and important reasons therefor. . . ."

manipulated in order to rid it of conflict, it "impaired the defendant's right" State v. Binet.

Lastly, the appellate argues that this misstatement of testimony was not accidental, but [instead], deliberate and calculated because the evidence put on by the State was weak (the State put on evidence inferring that the victim was shot close range, yet, the medical examiner and autopsy report say otherwise; Tr. 7/16/97 at 52; 7/17/97 at 50; 7/16/97 at 21; also see autopsy report.

(Tr. 7/16/97 at 52: "Q.  And did you examine the actual gun shot wound itself?  A.  Yes.  According to my notes it was--apparently there was a single gun shot wound to the left shoulder about one centimeter in size with some stippling around which is a sort of blackening in the area which stays around the edge of the wound."

"Q  Are you familiar with the term stippling?  A  Yes I am.   Q  Refer please to what's been marked as defense A.  Do you see any stippling?   A  No, I don't see any stippling.  Q  Can you wash stippling off?   A  No, one cannot wash off the stippling.  Tr. 7/17/97 at 21.

"A  I came down the stairs, I came around and walked this way.  When I came around here, this is where he was standing at with the gun in his hand. Was the car door open or closed?   A  It was closed.   Q  And do you remember if the window was up or down?   A  The window was down. Tr. 7/17/97 at 50.

"Bunkely" held, ". . . a verdict only weakly supported by the record is more likely to have been effected by errors than one with overwhelming record support.'" Id.. 696.  Bunkely v. Commissioner of Connecticut 222 Conn 444, 458 (1992).

Because the appellant failed to take a timely exception at trial, he now seeks to raise the issue under the "Plain error" doctrine.  "Plain error may be found on appeal, when error, unasserted or uncomplained of at trial, but plainly evident from record, prejudicially effects the litigant's substantial right and, if uncorrected, would cause miscarriage of justice or damage the integrity, reputation and fairness of judicial process."   Supreme Court Rules of Practice, Rule 9, subd. D(1)(d).-Id.

Appendix A at 5-7.

In its brief, the State responded to the petitioner's claim, in part, as follows.

In this claim the defendant argues that the state's attorney's argument to the jury manipulated the testimony of two witnesses in an effort to make contradictory testimony seem consistent. <u>It is Pierce's contention that the state maintained that the victim was shot at close range but that the autopsy report and the medical examiner's testimony did not so indicate.</u> Whether or not Mr. Brewer was shot at a distance which would cause gunshot residue is not relevant to the issue of the identity of the person who shot him.

(Emphasis added.)   Appendix D to Memorandum of Law in Support of Respondent's

Motion To Dismiss [Doc. # 7] at 13.

After the Connecticut Appellate Court affirmed the petitioner's conviction in a per

curiam memorandum decision, the petitioner filed a petition for certification with the

Connecticut Supreme Court. In that petition, he sought discretionary review of the decision

of the Appellate Court. He also changed the facts upon which his claim that misconduct

occurred during the state's closing argument was based. Specifically, and <u>for the first time</u>,

he argued that:

> The prosecutor engaged in misconduct on numerous [occasions]. First, during closing arguments, he repeatedly told the jury to pay special attention to Richard Guzman, chief witness, and Polita Rodriguez testimony because it concurred when, in fact, it didn't. Guzman testified as to being at Rodriguez' apartment door at the time of the shot while Rodriguez said he wasn't. She was corroborated by another state witness, of whom, claim to have been present with her at the time of the shot.

Appendix B at 7th page (this is labeled page 1 of the section entitled "concise argument.")

### 2.    The petitioner has changed the factual basis of his claim and, therefore, the claim has not been exhausted in the state courts

In his brief to the Connecticut Appellate Court, the petitioner admitted that he did not

object to the state's closing argument. <u>See</u> Appendix A at 5-7 ("Because the appellant

failed to take a timely exception at trial. . . ."). In challenging the state's closing argument

before the Connecticut Appellate Court, the petitioner asserted that the prosecutor misled

the jury regarding the distance between the victim and the firearm with which he was shot. In his petition for certification to the Connecticut Supreme Court and in Count One of his petition to this Court, however, the petitioner has changed the factual basis for his claim. Before this Court and the Connecticut Supreme Court, he claims that the state's closing argument misled the jury regarding the whereabouts of Richard Guzman at the time of the shooting.  By changing the factual basis of his claim, the petitioner has presented this Court with an unexhausted claim.  Therefore, the claim presented in Count One of the second amended petition cannot be reviewed.

Federal habeas corpus relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A).  Indeed, even if a petitioner can demonstrate a "clear violation" of his rights, federal relief is unwarranted unless available state remedies are exhausted. Duckworth v. Serrano, 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981) (per curiam).  This "exhaustion requirement springs primarily from considerations of comity." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982).  It requires that federal courts refrain from exercising "habeas review of a state conviction unless the state courts have had an opportunity to consider and correct any violation of federal law" and, thus, demonstrates "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions."  Id.

In order to satisfy the exhaustion requirement, "'[i]t is not sufficient merely that the [petitioner] has been through the state courts.' . . .  Rather the petitioner's claims must be fairly presented so the that state has the opportunity to correct any alleged constitutional violations. . . ."  (Citations omitted.)  Ellman v. Davis, 42 F.3d 144, 147 (2d Cir. 1994).

9

Indeed, the U.S. Supreme Court has explained that to "protect the integrity of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts. . . ." (Emphasis in original.)  O'Sullivan v. Boerckel, 526 U.S. 838, 848, 119 S.Ct. 1728, 1734, 144 L.Ed.2d 1 (1999).  "A petitioner meets the fair presentation requirement if the state court rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits."  Gentry v. Lansdown, 175 F.3d 1082, 1083 (8th Cir. 1999) citing Castille v. Peoples, 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989).  See also Howard v. Sullivan, 185 F.3d 721, 725 (7th Cir. 1999) (fair presentment "requires the petitioner to have given the state courts a meaningful opportunity to pass upon the substance of the claims she later presses in federal court").  A petitioner has "fairly presented" a claim if he has "'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'  Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). To have done so, the petitioner 'must have set forth the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim.'  Id."  Dorsey v. Kelly, 112 F.3d 50, 52 (2d Cir. 1997).  "[T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected

10

by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation."  <u>Daye</u>, 696 F.2d at 194.

In the instant case, the petitioner's claim in Count One has not been "fairly presented" to the state courts.  He clearly explained to the Connecticut Appellate Court that he was challenging the prosecutor's remarks concerning the distance between the shooter and the victim.  Nevertheless, in his petition for certification to the Connecticut Supreme Court, he claimed <u>for the first time</u> that the prosecutor misled the jury as to the whereabouts of a state's witness, Richard Guzman, at the time of the shooting.  It is this claim regarding Guzman's whereabouts that he now presents to this Court.  Such claim is not exhausted, however, because <u>the mere presentation of "a claim for the first time to a state court of discretionary review is insufficient to exhaust the claim unless the court considers it.</u>"[2]  (Emphasis added.)    <u>Lurie v. Wittner</u>, 228 F.3d 113, 124 (2d Cir. 2000) <u>citing</u> <u>Castille v. Peoples</u>, 489 U.S. at 351, 109 S.Ct. at 1060.

As shown above, the petitioner first raised his claim regarding the state's closing argument and Guzman's whereabouts in his petition for discretionary review to the state Supreme Court.  Thus, that claim has not been "fairly presented" to the state courts and constitutes an unexhausted claim.  As a result, the claim described in Count One cannot be reviewed by this Court.

>    **B.    The Petitioner Has Failed To Exhaust The Claim Raised In Count Two Of His Petition By "Fairly" Presenting It To The State Courts**

---

[2]    Likewise, a claim has not been "fairly presented" on appeal when it is first raised in a reply brief and state law provides that "a claim of error first raised in a reply brief is not properly presented to the reviewing court."  <u>Laurie</u>, 228 F.3d at 124.

In Count Two of his Second Amended Petition, the petitioner claims that his due process rights were violated "due to suggestive identification procedures."  Claim Two; Petition at 8-10 [Doc. # 12].  Specifically, he alleges that "state's witnesses Jose Robora and Frederick D'Amigo testified that detectives had suggested and/or singled out the petitioner's photo."  The petitioner has failed to exhaust this claim, however, by fairly presenting it to the state courts of Connecticut.  In his appeal to the Connecticut Appellate Court, the petitioner only alleged that Jose Robora's identification was coerced.  It was not until he petitioned the Connecticut Supreme Court for discretionary review that he added a claim that Frederick D'Amico also was subjected to such coercion.  Thus, his claim is not exhausted--at least as the claim pertains to D'Amico.  Therefore, the petitioner is not entitled to relief upon this claim.

### 1.     Facts pertaining to the claim

In his brief to Connecticut's Appellate Court, the petitioner raised, for the first time, a claim that one witness, Jose Robora, was coerced by police into selecting the petitioner's photograph and that such coercion resulted in a "suggestive identification."  Specifically, he argued that:

> The appellant is arguing "suggestive identification", when a State's witness testified as to being told by detectives, to select the appellant's photo (tr. 7/17/97) at 139-41).  "In determining [whether] a pretrial identification violated a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: First, it must be determined whether the identification [procedure] was unnecessarily suggestive, and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on the totality of the circumstances."  State v. Theriault, 182 Conn. 366, 371-72.

> This particular witness provided detectives with information regarding the appellant's prior misconduct which was introduced at trial through [Detective] Texeira (See statement of Jose Robora and tr. 7/17/97 at 111, respectively.

> Its prejudicial effect is evident.  Had not Robora been coaxed such evidence of the appellant's prior misconduct would not have been admissible.  It also allowed certain admissions in the appellant's statement to become admissible (tr. 7/17/97 at 90-92.)
>
> Because of reasons set forth above the appellant is asking the Court to, while viewing the issue of "suggestive identification" to abandon the traditional way of viewing such an issue, and instead, if it is determined that the identification [procedure] was unnecessarily suggestive, view in light of the premise, inwich [sic] it laid, for other prejudicial evidence that would be, ordinarily, inadmissible, but now admissible, because of statements and testimony produce through suggestive [procedures].
>
> Because appellant failed to take a timely exception at trial he now seeks to raise the claim of error under the "Plain error" doctrine.  "Plain error may be found on appeal, when error, unasserted and uncomplained of at trial, yet plainly evident from record, prejudicially effects the litigant's substantial right and, if uncorrected, would cause a miscarriage of justice or damage the integrity, reputation and fairness of the judicial process."  Supreme Court Rules of Practice, Rule 9, subd. D(1)(d).

Appendix A at 7-8.

After the Connecticut Appellate Court affirmed the petitioner's conviction, the petitioner filed a petition for certification with the Connecticut Supreme Court.  In that petition, he sought discretionary review of the Appellate Court's decision.  In arguing that the identification was the result of "suggestive identification" procedures, the petitioner argued for the first time that two witnesses, Jose Robora and Frederick D'Amico, were coerced by the police to select his photograph.  Specifically, he asserted that:

> State's witnesses Jose Robora and Frederick D'Amico testified that, after selecting a photo Id. other than the appellant's, the detectives coerced him to select the appellant's photo and that when questioned by detectives he was, singledly [sic], shown the appellant's photo, respectively. Tactics rising to "suggestive identification."

Appendix B at 8th page (this is labeled page 2 of the section entitled "concise argument.")

**2.    The petitioner has changed the factual basis of his claim and, therefore, the claim has not been exhausted in the state courts**

As with his claim in Count One, the petitioner has failed to exhaust his state court remedies as to Count Two.  Before the Connecticut Appellate Court, he claimed that <u>one witness</u> had been coerced into identifying him.  In his petition for discretionary review to the Connecticut Supreme Court, as well as in the Court, the petitioner claimed that <u>two witnesses</u> were coerced.  Thus, while his claim may be exhausted as to Jose Robora, his claim as to Frederick D'Amico has not been fairly presented to the state courts.  Thus, it is not exhausted and cannot be reviewed by this Court.

**C.    The Petitioner Has Failed To Exhaust The Claim Raised In Count Three Of His Petition By "Fairly" Presenting The Federal Nature Of His Claim To The State Courts**

In Count Three of the Second Amended Petition, the petitioner claims that his due process rights were violated because he was "denied fair trial by false testimony."  Claim Three; Petition at 10 [Doc. # 12].  Specifically, he alleges that "Det. Texeira testified that there was a 'hit' on petitioner for committing crime.  Evidence shows the 'hit' was said to only be out on state's chief witness Richard Guzman."  <u>Id</u>.  The petitioner is not entitled to review of this claim.  Before the Connecticut Appellate Court, he argued that the admission of evidence about an alleged "hit" constituted evidentiary error.   In his petition for discretionary review to the Connecticut Supreme Court and in the present petition, he claims that such testimony was false.  The mere presentation of "a claim for the first time to a state court of discretionary review is insufficient to exhaust the claim unless the court considers it."  <u>Lurie v. Wittner</u>, 228 F.3d 113, 124 (2d Cir. 2000) <u>citing</u> <u>Castille v.</u>

14

Peoples, 489 U.S. at 351, 109 S.Ct. at 1060.  Thus, because he first raised his claim of

false testimony in his petition for discretionary review by the Connecticut Supreme Court,

the petition did not "fairly" present his that claim to the state courts.  As a result, the

petitioner's claim is not exhausted and cannot be reviewed in these federal habeas corpus

proceedings.

### 1.    Facts pertaining to the claim

In his brief to Connecticut's Appellate Court, the petitioner claimed that testimony

regarding a "hit" was improperly admitted at his criminal trial.  He asserted that such

evidence was overly prejudicial, not relevant to any issue before the court, and constituted

hearsay.  Specifically, he argued that:

> The appellant was exposed to highly prejudicial evidence when Det. Texeira
> testified that their was "hit" on the appellant for committing the crime charged
> (tr. 7/17/97 at 94.)  "Evidence is prejudicial 'when it tends to have some
> adverse effect [upon] a defendant beyond tending to prove the fact or issue
> that [justified] its admission into evidence.'  United States v. Figueroa,
> 618 F.2d 934, 943 (2 Cir. 1980)".  Such evidence serves more harm than
> good because it only sends the jury into a speculative mind state inquiring
> about the "hit".
>
> b
>
> The evidence was inadmissible due to its [irrelevancies]. . . .  "evidence is
> admissible when it tends to establish a fact in issue or to corroborate other
> direct evidence in the case.  One fact is relevant to another fact whenever,
> according to the common course of events, the existence of the one, taken
> alone or in connection with other facts, renders the existence of the other
> certain or more probable."  State v. Ulen, 31 Conn. App. 20, 28, 226 Conn.
> 905.  The evidence was not enter to establish anything in the State's case.
> It was question posed in the police interrogation of the appellant, with no
> premise, which the appellant argues next, to get him to reveal any possible
> knowledge he had about the crime.  It served to aid the State in its case in
> no way whatsoever.
>
> c

15

The evidence was inadmissible because it wasn't supported by anything in the record (See report of Det. Naedelle 10/1/96). If a claim is made against the evidence in the case, and wholly unsupported by proof, it is error to submit it to jury as if the evidence justified the claim, and without comment, as there is greater danger leading to an unjust verdict."[3]

d

Finally, the appellant argues that even if the admission of the "hit" was introduce against the State's chief witness (See report of Det. Naedelle 10/1/96), it was still inadmissible because it was, technically, hearsay. "Sharpe" held that when considering the admissibility of hearsay evidence "our analysis must focus on (1) [whether] there was a reasonable necessity for the admission of the statement, and (2) [whether] the statement was supported by the equivalent guarantees of reliability and trustworthiness essential to other evidence admitted under the traditional hearsay exceptions." State v. Sharpe 195 Conn. 651, 664 (1985). Careful review of the record shows that it was only "told" to Det. Naedelle, by an informant that their was a "hit" on the State's chief witness. And it was never further investigated nor validated.

Because the appellant failed to take a timely exception at trial he now seeks to raise the claim of error under the "Plain error" doctrine. "Plain error may be found on appeal, when error, unasserted and uncomplained of at trial, but plainly evident from record, prejudicially effects the litigant's substantial right and, uncorrected, would cause miscarriage of justice or damage the integrity, reputation and fairness of the judicial process." Supreme Court Rules of Practice, Rule 9, subd. D(1)(d). Id.

Appendix A at 3-4.

---

[3] "It is the duty of the court to submit to the jury all controverted questions of fact when there is any evidence to support the respective claims of the parties; but if a claim is made against the evidence in the case, and wholly unsupported by proof, it is error to submit it to the jury as if the evidence justified the claim, and without comment, as there is great danger of its leading to an unjust verdict." Lewis v. Phoenix Mutual Life Ins. Co., 44 Conn. 72, 88 (1876). See also State v. Berger, 249 Conn. 218, 241, 733 A.2d 156 (1999) (Berdon, J. dissenting); State v. Chapman, 229 Conn. 529, 549, 643 A.2d 1213 (1994) (Berdon, J., with whom Katz, J., joined, dissenting). The petitioner's use of this quotation is puzzling. Justice Berdon used this language in support of his dissents in Berger and Chapman in which he argued that the majority erred by allowing the jury to be instructed on a theory of criminal liability that was not supported by the evidence. It has nothing to do with the admissibility of evidence.

After the Connecticut Appellate Court affirmed the petitioner's conviction, the petitioner filed a petition for certification with the Connecticut Supreme Court. In that petition, he sought discretionary review of the Appellate Court's decision. Specifically, he argued that the testimony of Detective Texeira should not have been admitted because:

> And [Detective Texeira] also testified that there was a "hit" on the appellant for committing the crime. Not only was such evidence prejudicial and unsolicited by the defense, it was also prior misconduct evidence and, thereby, inadmissible.

Appendix B at 7th page (this is labeled page 1 of the section entitled "concise argument.")

For the _first_ time, he also argued that:

> The state also allowed this same detective to testify falsely, which the state solicited, that there was a "hit" on the appellant for committing the crime. Again, police reports show that this "hit" was told to detectives to only be out on Richard Guzman

Appendix B at 8th page (this is labeled page 2 of the section entitled "concise argument").

### 2.    The petitioner has changed the legal basis upon which he challenges testimony about a "hit" and, therefore, the claim has not been exhausted in the state courts

As previously explained, for a claim to be "exhausted," it must have been fairly presented to the state courts. A petitioner has "fairly presented" a claim if he has "'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.' Daye, 696 F.2d at 191. This means that the legal basis of the claim must be the "substantial equivalent" of the claim as it was presented to the state courts. Daye, 696 F.2d at 192 ("the legal doctrines asserted in state and federal courts" must be "substantially the same.") See Jones v. Keane, 329 F.3d 290, 293-94 (2d Cir. 2003) (insufficiency of the evidence claim was not the substantial equivalent of claim that statute unconstitutionally vague); Strogov v. Attorney General, 191 F.3d 188, 190-93 (2d Cir. 1999)

17

(insufficiency claim and ineffectiveness claim were not the substantial equivalent of fair notice claim); Daye, 696 F.2d at 193 ("a defendant's claim that he was deprived of a fair trial because of the admission in evidence of a statement objectionable as hearsay would not put the" state "court on notice that the defendant claimed a violation of his constitutional right to be confronted by his accusers").  If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan v. Henry, 513 U.S. 364, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995).

For example, in Johnson v. Zenon, 88 F.3d 828 (9th Cir. 1996), a petitioner, who was tried on charges that included burglary with intent to commit rape, challenged the admission of evidence that he had previously been convicted of rape.  In the state appellate courts, he claimed that the admission of the prior conviction constituted evidentiary error.  Nevertheless, in one sentence of his appellate brief, he also asserted that the admission of such evidence "'blackened' defendant's character and infringed on his right to present a defense and receive a fair trial."  Subsequently, the petitioner challenged the admission of his prior rape conviction in a federal habeas corpus proceeding.  In the federal court, he asserted that the admission of such evidence deprived him of his due process rights.  The Court of Appeals for the Ninth Circuit held that the petitioner's due process claim had not been presented to the state courts and, therefore, that his claim was not exhausted.

In the instant case, the petitioner presented his challenge to the evidence of a "hit" to the Connecticut Appellate Court as evidentiary error.  Specifically, he asserted that such evidence was overly prejudicial, not relevant to any issue before the court, and constituted

18

hearsay.  It was not until he petitioned the state Supreme Court for discretionary review that he asserted that such testimony was false <u>or</u>  that the admission of such allegedly false testimony violated his rights under the federal Constitution.  The cases that he cited in his brief to the Connecticut Appellate Court only discussed claims of evidentiary error-- not false or perjured testimony.  <u>See</u> <u>United States v. Figueroa</u>, 618 F.2d 934 (2d Cir. 1980); <u>State v. Sharpe</u>, 195 Conn. 651, 491 A.2d 345 (1985); <u>State v. Ulen</u>, 31 Conn. App. 20, 623 A.2d 70 (1993).

For the petitioner to have exhausted his present claim that his due process rights were violated by the admission of false testimony, "the nature or presentation of the claim must have been likely to alert the" state "court to the claim's federal nature."  <u>Daye</u>, 696 F.2d at 192.  In the Connecticut Appellate Court, however, he did not raise a claim that Detective Teixeira presented false testimony.  Rather, he first raised the claim in a petition to the state's highest court for discretionary review.  The mere presentation of "a claim for the first time to a state court of discretionary review is insufficient to exhaust the claim unless the court considers it."  <u>Lurie v. Wittner</u>, 228 F.3d 113, 124 (2d Cir. 2000) <u>citing</u> <u>Castille v. Peoples</u>, 489 U.S. at 351, 109 S.Ct. at 1060.  Thus, because he first raised his claim of false testimony in his petition for discretionary review by the Connecticut Supreme Court, the petitioner did not "fairly" present his claim to the state courts.  As a result, the claim raised in Count Three has not been exhausted.  The petitioner cannot obtain review of, or relief upon, an unexhausted claim in these federal habeas corpus proceedings.

**D.    The Petitioner Has Failed To Exhaust The Claim Raised In Count Four Of His Petition By "Fairly" Presenting The Federal Nature Of His Claim To The State Courts**

In Count Four of the Second Amended Petition, the petitioner claims that his due process and fair trial rights were violated due to the admission of "improper evidence." Claim Four; Petition at 11-13 [Doc. # 12]. Specifically, he alleges that "Det. Texeira testified that there was a warrant for petitioner's arrest and that he was known to use and sell drugs." The petitioner is not entitled to review of this claim. In the state courts, he argued that the admission of such evidence constituted evidentiary error. He now claims that its admission violated his constitutional rights to due process and a fair trial. Because the legal basis of his claim is different than that argued in the state courts, the petitioner's claim is not exhausted and cannot be reviewed in these federal habeas corpus proceedings.

**1.    Facts pertaining to the claim**

In his brief to Connecticut's Appellate Court, the petitioner raised, for the first time, a claim that testimony regarding an outstanding warrant and drug use was improperly admitted at his criminal trial. Specifically, he argued that:

> The trial court failed to [exercise] its "discretion", which resulted in and "abuse of discretion" when it allowed in evidence of the appellant's prior misconduct when Det. Texeira testified that their was a "warrant for a violation of the court" for the appellant (tr. 7/17/97 at 83) "As a general rule, evidence of the defendant's prior crimes or misconduct is not admissible. . . . We have, however, recognized exceptions to the general rule if the purpose for which the evidence offered is to prove intent, identity, malice, [motive], a system of criminal activity or the elements of a crime. . . . To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-prong analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exception. Second, the probative value

of such evidence must outweigh the prejudicial effect of the other crime evidence' (Citations omitted; internal quotation marks omitted.)" State v. Oliver, 48 Conn. App. 41, 49-50 (1998)  The admission clearly failed to meet any of the exceptions in the first-prong of the test.  And it failed to meet the second-prong because its prejudicial effect upon the jury was undeniable because it shows bad character of the appellant.

Because the appellant failed to take a timely exception at trial he now seeks to raise the claim of error under the "Plain error" doctrine.  Plain error may be found on appeal, when error, unasserted or uncomplained at trial, but plainly evident from record, prejudicially effects the litigant's substantial right and, if uncorrected, would cause a miscarriage of justice or damage the integrity, reputation and fairness of the judicial process."  Supreme Court Rules of Practice, Rule 9, subd. D(1)(d).

Appendix A at 4-5.

In that same brief to the Connecticut Appellate Court, the petitioner challenged the

admission of evidence that he used and sold drugs and carried weapons.  Specifically, he

claimed that:

8

The appellant was prejudice by certain admissions made in his statement given to detectives prior to the arrest. (Tr. 7/17/97 at 90-92).  Because in the statement the appellant made admissions to selling and using drugs (tr. 7/17/97 at 90), made references to carrying weapons (tr, 7/17/97) at 91), and because detectives made an unfounded claim as to there being a "hit" on the appellant for committing the crime charge (tr. 7/17/97 at 92-91).  "Evidence is prejudicial 'when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence.'  United States v. Figueroa, 618 F.2d 934, 943 (2 Cir. 1980).  Such admission only tarnish the reputation of the appellant.

b

The appellant also argues that it was inadmissible because it was bad character evidence.  "As a general rule, evidence of the defendant's prior crimes or misconduct is not admissible. . . .  We have, however, recognized exceptions to the general rule if the purpose for which the evidence is offered is to prove intent, identity, malice motive, or a system of criminal activity or the elements of a crime. . . .  To determine whether evidence of prior misconduct falls within an exception the general rule prohibiting its

21

admission, we have adopted a two-prong analysis. . . .  First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions.   Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence. . . .'" (Citations marks omitted; Internal quotation marks omitted.) State v. Dunbar, 51 Conn. App. 313, 324

Because the appellant failed to take a timely exception at trial he now seeks to raise the issue under the "Plain error" doctrine.  "Plain error may be found on appeal, when error, unasserted or uncomplained of at trial, but plainly evident from record, prejudicially effects the litigant's substantial right and, if uncorrected, would cause a miscarriage of justice or damage the integrity, reputation and fairness of the judicial process."  Supreme Court Rules of Practice, Rule 9, subd. D(1)(d).

9 (Conjunction with 8)

If the Court rules that the admission, made in the appellant statement, pertaining to the appellant carrying weapons, and selling and using drugs was inadmissable and prejudicial, then the appellant is asking this Court to consider other evidence, of this same nature, that became admissible only after the admission of the appellant's statement (tr. 7/17/97 at 111), where Det. Texeira testified as to being provided with information as to the appellant carrying weapons, and selling and using drugs.

The appellant argues that the admission was inadmissible misconduct evidence and, ultimately, hearsay.  Which the appellant cite's respectively.  As a general rule, evidence of the defendant's prior crimes or misconduct is not admissible. . . .  We have, however, recognized exceptions to the general rule if the purpose for which the evidence is offered is to prove intent, identity, malice motive, or a system of criminal activity or the elements of a crime. . . .  To determine whether evidence of prior misconduct falls within an exception the general rule prohibiting its admission, we have adopted a two-prong analysis. . . .  First, the evidence must be proven material to at least one of the circumstances encompassed by the exceptions.  Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence. . . .'" (Citations marks omitted; Internal quotation marks omitted.) State v. Oliver, 48 Conn. App. 41, 49-50  "Sharpe" held that when considering [the] admissibility of hearsay evidence "our analysis must focus on (1) whether there was reasonable necessity for the admission of the statement, and (2) whether the statement was supported by the equivalent guarantees of reliability and trustworthiness essential to the other evidence admitted under the traditional hearsay exceptions."   State v. Sharpe 195 Conn. 651, 664 (1985)

> Because the appellant failed to take a timely exception at trial he now seeks to raise the issue under the "Plain error" doctrine. "Plain error may be found on appeal, when error, unasserted and uncomplained of at trial, yet plainly evident from record, prejudicially effects the litigant's substantial right and, if uncorrected, would cause a miscarriage of justice and damage the integrity, reputation and fairness of the judicial process." Supreme Court Rules of Practice, Rule 9, subd. D(1)(d).

Appendix A at 10-12.

After the Connecticut Appellate Court affirmed the petitioner's conviction, the petitioner filed a petition for certification with the Connecticut Supreme Court. In that petition, he sought discretionary review of the decision of the Appellate Court. Specifically, he argued that the testimony of Detective Texeira should not have been admitted because:

> Det. Texeira prejudiced the appellant continuously throughout trial: He testified that the appellant was known for carrying weapons, selling and using drugs. He testified that the appellant had a warrant for a violation of the Court. And he also testified that there was a "hit" on the appellant for committing the crime. Not only was such evidence prejudicial and unsolicited by the defense, it was also prior misconduct evidence and, thereby, inadmissible.

Appendix B at 7th page (this is labeled page 1 of the section entitled "concise argument.")

### 2.    The petitioner has changed the legal basis of his claim and, therefore, the claim has not been exhausted in the state courts

As previously explained, for a claim to be "exhausted," the legal basis of the claim must be the "substantial equivalent" of the claim as it was presented to the state courts. Daye, 696 F.2d at 192 ("the legal doctrines asserted in state and federal courts" must be "substantially the same.") See Jones v. Keane, 329 F.3d 290, 293-94 (2d Cir. 2003) (insufficiency of the evidence claim was not the substantial equivalent of claim that statute unconstitutionally vague); Strogov v. Attorney General, 191 F.3d 188, 190-93 (2d Cir. 1999) (insufficiency claim and ineffectiveness claim were not the substantial equivalent of fair

notice claim); <u>Daye</u>, 696 F.2d at 193 ("a defendant's claim that he was deprived of a fair trial because of the admission in evidence of a statement objectionable as hearsay would not put the" state "court on notice that the defendant claimed a violation of his constitutional right to be confronted by his accusers").

In the instant case, the petitioner presented his claim to the state courts as evidentiary error. At no time did the petitioner alert the state courts that the admission of such testimony violated his rights under the federal Constitution. The cases that he cited in his brief to the Connecticut Appellate Court only discussed claims of evidentiary error. For example, in <u>State v. Oliver</u>, 48 Conn. App. 41, 48-52, 708 A.2d 594 (1998), which was cited by the petitioner in his brief to the Connecticut Appellate Court, a defendant challenged the admission of certain evidence on the ground that its prejudicial impact outweighed its probative value.[4] Likewise, in <u>State v. Dunbar</u>, 51 Conn. App. 313, 320-26, 721 A.2d 1229 (1998), the defendant raised an evidentiary claim challenging the admission of evidence of his prior arrests and convictions. In <u>State v. Sharpe</u>, 195 Conn. 651, 661-66, 491 A.2d 345 (1985), the court addressed certain evidence which the defendant complained was inadmissible on hearsay grounds. As in <u>Oliver</u> and <u>Dunbar</u>, no constitutional challenge was raised as to the admissibility of the evidence in <u>Sharpe</u>.

---

[4]     This claim focuses on the second prong of Connecticut's rule regarding the admission of evidence of prior misconduct. "'To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crimes evidence. . . .'" (Citations omitted.) <u>Oliver</u>, 48 Conn. App. at 50. The exceptions referred to in the first prong allow the admission of such evidence for the purpose of proving "intent, identity, malic, motive, a system of criminal activity or the elements of a crime." <u>Id</u>.

Finally, in <u>United States v. Figueroa</u>, 618 F.2d 934, 938-44 (2d Cir. 1980), the court addressed a defendant's claim that certain prior misconduct evidence was inadmissible under the Federal Rules of Evidence.

For the petitioner to have exhausted his present claim of due process and fair trial violations, "the nature or presentation of the claim must have been likely to alert the" state "court to the claim's federal nature." <u>Daye</u>, 696 F.2d at 192.  In the Connecticut state courts, however, he did not raise a claim that the admission of prior misconduct evidence violated his due process and fair trial rights.  Moreover, none of the cases upon which he relied in the state courts discussed such a claim.  As a result, the petitioner has not fairly presented the claim that he now raises in Count Four to the state courts and, therefore, it has not been exhausted.  The petitioner cannot obtain review of, or relief upon, an unexhausted claim in these federal habeas corpus proceedings.

### E.     Because The Petitioner Has Not "Fairly" Presented Four Of His Claims To The State Courts, The Instant Petition Must Be Dismissed Or, Alternatively, Stayed

As demonstrated above, the petitioner raises four unexhausted claims.  As a result, he has presented this Court with a "mixed" petition.  In <u>Rose v. Lundy</u>, 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982), the High Court held "that a district court must dismiss habeas petitions containing both unexhausted and exhausted claims."  <u>See also</u> <u>Grey v. Hoke</u>, 933 F.2d 117, 120-21 (2d Cir. 1991) (if a "habeas petition contains both exhausted and unexhausted claims, it must be dismissed to enable petitioner to exhaust his unexhausted claims or to file a subsequent petition dropping them"); <u>Pesina v. Johnson</u>, 913 F.2d 53, 54 (2d Cir. 1990).  When confronted with a "mixed" petition, the district court

must either send the petitioner "back to the state courts or afford him the opportunity to abandon his unexhausted claims and proceed only with his exhausted claims." Zarvela v. Artuz, 254 F.3d 374, 378 (2d Cir. 2001). The instant petition contains four unexhausted claims. Normally, the court would be required to dismiss the petition.

In Zarvela, however, the Court determined that when a petition contains both exhausted and unexhausted claims, the unexhausted claims must be dismissed. As for the exhausted claims, a district court should exercise discretion either to stay further proceedings . . . or to dismiss the petition in its entirety." Zarvela, 254 F.3d at 380. A stay would be the appropriate course of action when "an outright dismissal 'could jeopardize the timeliness of a collateral attack. . . .'" (Citations omitted.) Id. When "a district court, confronted with a mixed petition, elects to stay the petition, it should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed." Id. at 381.

In the instant case, the Connecticut Supreme Court denied the petitioner certification to appeal the Appellate Court's decision on May 16, 2001. The petitioner then had ninety days within which to petition for writ of certiorari in the Supreme Court of the United States. He did not do so. The petitioner initiated the instant federal habeas corpus proceedings on May 14, 2002.

As a result, the period between August 14, 2001 (ninety days after the state Supreme Court's denial of certification) and May 14, 2002 (the date that the petitioner filed his petition pursuant to 28 U.S.C. § 2254) may be counted toward the one-year statute of

limitations.[5]  Thus, the petitioner has used approximately nine (9) months of the one-year

period, as that period is calculated under § 2244(d).  Given these facts, it is clear that the

dismissal of the entire petition would not "jeopardize the timeliness of a collateral attack";

Zarvela, 254 F.3d at 380; and the petition should be dismissed in its entirety.[6]

## F.    This Court Should Allow The State Courts To Determine Whether The Petitioner Has Any Available State Court Remedies

In Pesina, the court concluded that until a petitioner attempts to present his claim

to the highest state court, even though the claim is likely to be found to be procedurally

barred, he has not met the exhaustion requirement.  The Court explained that "we have

no authority to declare as a matter of state law that" relief is unavailable through a state's

---

[5]     In part, 28 U.S.C. § 2244(d)(1) provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of . . . the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review. . . ."

"[D]irect review," as used in Section 2244(d)(1)(A), includes direct review by the United States Supreme Court via writ of certiorari, and . . . the limitations period for state prisoners, therefore, begins to run only after the denial of certiorari or the expiration of time for seeking certiorari. . . ."  (Citations omitted.)  Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001).  The petitioner had ninety days from May 16, 2001 within which to file a petition for writ of certiorari with the Supreme Court of the United States.  See Rule 13 of the Rules of the Supreme Court of the United States.

[6]     The petitioner's state habeas corpus proceedings would not affect this calculation.  The petitioner's motion for review of the state habeas court's denial of the waiver of costs and fees and the appointment of counsel was denied on April 25, 2001. The petitioner then had twenty (20) days within which to file a petition for certification with the Connecticut Supreme Court.  He did not do so.  Thus, for the purposes of § 2244(d), the petitioner's state habeas corpus proceedings concluded on May 15, 2001.

27

courts.  <u>Pesina</u>, 913 F.2d at 54.[7]  Thus, the question of whether the petitioner has any

"available" state court procedures by which he may assert his unexhausted claims is a

matter to be decided by the state courts. Thus, unless and until the state courts rebuff this

petitioner in his efforts to raise his claims, the petition must be dismissed.

## III.    CONCLUSION

For the reasons set forth above, this Court should dismiss this "mixed" petition

attacking the 1997 state conviction for manslaughter in the first degree with a firearm.

Alternatively, the Court could dismiss the unexhausted claims and stay further proceedings

on the other claims raised by the petitioner.

---

[7]     In <u>Grey v. Hoke</u>, 933 F.2d 117, 120-21 (2nd Cir. 1991), the Court held that claims are exhausted if it is clear that a state court would hold the claim to be procedurally barred but that federal habeas relief is still not warranted absent a showing that good "cause" existed to excuse the default and that actual "prejudice" resulted *or* unless a miscarriage of justice would result from the federal court's failure to grant relief.  <u>See</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).  In <u>Grey v. Hoke</u>, however, the respondent appears to have conceded that the petitioner no longer had remedies available in state courts.

From <u>Pesina v. Johnson</u> and <u>Grey v. Hoke</u>, it appears that if a federal court is not convinced that no avenue exists by which the petitioner may attempt to bring his claim to the highest state court, the petition should be dismissed for lack of exhaustion.  If the claim clearly would be procedurally barred in state courts, the claim may be reviewed by federal courts only upon a showing of cause and prejudice, or a miscarriage of justice, to excuse the default.

Respectfully submitted,

RESPONDENT-WARDEN GIOVANNI GOMEZ

By: _____

JO ANNE SULIK
Assistant State's Attorney
Civil Litigation Bureau
Office of the Chief State's Attorney
300 Corporate Place
Rocky Hill, Connecticut 06067
(860) 258-5887
(860) 258-5968 (fax)
Fed. Bar. No. ct 15122

## **CERTIFICATION**

I hereby certify that a copy of this document was mailed to Andre Pierce, Inmate # 218478, MacDougall Correctional Institution, 1153 East Street South, Suffield, Connecticut 06080, on December 3, 2003.

_____

JO ANNE SULIK
Assistant State's Attorney

29